07-0308-cr
United States v. Mills

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: May 30, 2008
Final briefs submitted
February 4, 2009                    Decided: June 26, 2009)

Docket No. 07-0308-cr

--------------------------------------

UNITED STATES OF AMERICA,

Appellee,

- v -

GARY MILLS, also known as G KNOCKER,

Defendant-Appellant.

--------------------------------------

Before:   KEARSE, SACK, and LIVINGSTON, Circuit Judges.

Appeal from a judgment of conviction of the United States District Court for the District of Connecticut (Peter C. Dorsey, Judge), sentencing defendant-appellant Gary Mills principally to a term of imprisonment of 188 months under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Mills challenges the district court's determination that his prior conviction for escape under Connecticut law is a violent felony for statutory sentencing-enhancement purposes. Based on the Supreme Court's recent decision in Chambers v. United States, 129 S. Ct. 687 (2009), we conclude that Mills's conviction for escape based on his failure to abide by the terms of his "transitional

supervision" was not a violent felony within the meaning of the Armed Career Criminal Act. Mills's sentencing, conducted pursuant to the Act, was therefore improper.

Remanded.

KAREN L. PECK, Assistant United States Attorney (Kevin J. O'Connor, United States Attorney, District of Connecticut; John H. Durham, Deputy United States Attorney; William J. Nardini, Assistant United States Attorney, of counsel), New Haven, CT, for Appellee.

RICHARD S. CRAMER, Hartford, CT, for Appellant.

PER CURIAM:

Defendant-Appellant Gary Mills appeals from a judgment of conviction of the United States District Court for the District of Connecticut (Peter C. Dorsey, Judge) by which he was sentenced principally to a term of imprisonment of 188 months under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The ACCA applies to persons who violate 18 U.S.C. § 922(g) and who have "three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). Mills met the first requirement inasmuch as he pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He argues, however, that he did not have three prior convictions for violent felonies or serious drug offenses, and that he therefore should not have been sentenced under the ACCA. Specifically, Mills asserts that his prior conviction for first-degree escape in violation of Conn. Gen.

2

Stat. § 53a-169 should not have been treated as a violent felony within the meaning of the statute. The government concedes that under the Supreme Court's recent decision in Chambers v. United States, 129 S. Ct. 687 (2009), the matter should be remanded for resentencing without reference to the ACCA. Because we agree with both Mills and the government that under Chambers, Mills's prior conviction for escape in the first degree was not a violent felony, we remand to the district court to vacate the sentence and to resentence Mills.

Mills contends further that his sentence was procedurally unreasonable because the sentencing court failed to address his request for a downward departure. Because we remand for resentencing in any event, we need not and do not resolve this issue.

**BACKGROUND**

On February 18, 2003, Mills was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On October 19, 2006, he pled guilty. The United States Probation Office prepared a presentence investigation report ("PSR") recommending that Mills be sentenced under the ACCA because he had three prior convictions for a violent felony or serious drug offense. Mills objected, arguing that one of the three predicate offenses identified in the PSR,

3

first-degree escape in violation of Conn. Gen. Stat. § 53a-169, was not a violent felony.[1]

_____

[1] In 1997 the statute provided, in pertinent part:

> A person is guilty of escape in the first degree (1) if he escapes from a correctional institution or (2) if he escapes from any public or private, nonprofit halfway house, group home or mental health facility or community residence to which he was transferred pursuant to subsection (e) of section 18-100 and he is in the custody of the Commissioner of Correction or is required to be returned to the custody of said commissioner upon his release from such facility or (3) if he escapes from a work detail or school on the premises of the correctional institution or (4) if he fails to return from a furlough . . . or (5) if he fails to return from work release or education release as authorized under sections 18-90a and 18-100 or (6) if he escapes from a hospital for mental illness in which he has been confined . . . or (7) if, while under the jurisdiction of the Psychiatric Security Review Board, but not confined to a hospital for mental illness, he leaves the state without authorization of the board.

Conn. Gen. Stat. § 53a-169(a). Connecticut law further provides:

> If the Commissioner of Correction deems that the purposes of this section may thus be more effectively carried out, the commissioner may transfer any person from one correctional institution to another or to any public or private nonprofit halfway house, group home or mental health facility or, after satisfactory participation in a residential program, to any approved community or private residence. Any inmate so transferred shall remain under the jurisdiction of said commissioner.

Conn. Gen. Stat. § 18-100(e).

4

At an evidentiary hearing in the district court, defense counsel established the circumstances of Mills's conviction in state court for first-degree escape. On July 15, 1997, Mills was released from prison and placed in "transitional supervision," under which he was authorized to reside in a private residence. By statute, however, he remained under the jurisdiction of the Connecticut Commissioner of Correction, see Conn. Gen. Stat. § 18-100(e), and was required to satisfy conditions similar to those required of parolees, including reporting regularly to a community enforcement officer.

On July 16, 1997, the day after his release, Mills reported as scheduled to his community enforcement officer. He was required to do so thereafter on a weekly basis. Following that appointment, however, he failed to appear for the meetings.

When Mills missed his next appointment, the enforcement officer attempted to find Mills by visiting the private residence in which he had been authorized to reside. Mills was not there. In light of Mills's continued missed appointments and the officer's continued inability to locate him, Mills was charged with first-degree escape in violation of Conn. Gen. Stat. § 53a-169(a). On June 2, 1998, he was convicted of this crime. The PSR relied on this conviction as a predicate violent felony conviction in recommending that Mills be sentenced under the ACCA.

At a sentencing hearing held on January 22, 2007, the district court rejected Mills's objection to the classification

5

of this offense as a violent felony for purposes of sentencing him under the ACCA. Employing the "categorical approach," see Taylor v. United States, 495 U.S. 575, 602 (1990), and relying on United States v. Jackson, 301 F.3d 59, 63 (2d Cir. 2002) (holding that escape is categorically a violent felony under the ACCA), the court concluded that it was required to classify Mills's conviction for escape as a violent felony and sentence him accordingly under the ACCA. As a result, the court concluded that the statutory mandatory minimum sentence was 180 months and the advisory sentencing range under the United States Sentencing Guidelines was 188 to 235 months.

Defense counsel argued for a below-Guidelines sentence equal to the mandatory minimum, 180 months, based on the non-violent nature of Mills's "escape" and his "extraordinary rehabilitation" while incarcerated prior to sentencing. Mills also filed a sentencing memorandum setting forth two additional grounds for a below-Guidelines sentence: the restrictive conditions of his confinement while in state custody under a federal detainer and "the profound effect upon Mr. Mills during his formative years" of the suicides of his sister and godfather.

The district court explicitly discussed the sentencing factors enumerated in 18 U.S.C. § 3553(a). "The credit you are entitled to," the district judge said, "includes an accommodation for the fact that you have manifested a redirection of your life . . . and I think you're entitled to some credit for that, but on the other hand, the seriousness of the offense . . . is

6

something I cannot ignore. . . .  I am not inclined to think that in reaching for what is a reasonable sentence, that going below the [G]uideline range is warranted."  Transcript of January 22, 2007, Sentencing Hr'g (page unnumbered); Government Appendix at 126-27.  The court therefore imposed a sentence of 188 months, which was at the bottom of the Guidelines range and eight months above the mandatory minimum sentence under the ACCA.

**DISCUSSION**

I.  Applicability of the ACCA

A.  Standard of Review

"We review de novo the district court's determination of whether a prior offense is a 'violent felony' under the ACCA." United States v. Lynch, 518 F.3d 164, 168 (2d Cir. 2008).

B.  Analysis

Mills was convicted in state court of escape in the first degree under Conn. Gen Stat. § 53a-169, the text of which is set forth in the margin at note 1 above.  A person is guilty of this crime if, inter alia, he or she "escapes from a correctional institution," Conn. Gen Stat. § 53a-169(a)(1), or "escapes from any public or private, nonprofit halfway house, group home or mental health facility or community residence to which he was transferred pursuant to subsection (e) of section 18-100 and he is in the custody of the Commissioner of Correction or is required to be returned to the custody of said commissioner upon his release from such facility," id. at § 53a-169(a)(2). The Connecticut Supreme Court has interpreted "escape" within the

7

meaning of Section 53a-169 to mean any "unauthorized departure from, or failure to return to, whatever may be designated as [the defendant's] place of incarceration or confinement." State v. Lubus, 581 A.2d 1045, 1048 (Conn. 1990).

"In Taylor[,] . . . the [Supreme] Court endorsed a 'categorical approach' to determining whether a prior conviction qualifies as a 'violent felony' under the ACCA. The sentencing court generally must 'look only to the fact of conviction and the statutory definition of the prior offense.'" United States v. Rosa, 507 F.3d 142, 151 (2d Cir. 2007) (quoting Taylor, 495 U.S. at 602). But where, as in Taylor, Rosa, and the instant case, "the statutory definition of the state crime of conviction encompasses both crimes that would qualify as a 'violent felony' and crimes that would not, . . . the Taylor Court concluded that a broader inquiry is permissible." Id. When a statute encompasses both violent and non-violent felonies, as Conn. Gen Stat. § 53a-169 does, we make a limited inquiry into which part of the statute the defendant was convicted of violating.

The inquiry is an easy one here. The government concedes that Mills's prior conviction for escape was pursuant to Conn. Gen Stat. § 53a-169(a)(2). The Connecticut Supreme Court has made clear that a violation of this section of the statute is consistent with both an affirmative escape from custody and a mere failure to return. See Lubus, 581 A.2d at 1048 ("We conclude . . . that § 53a-169(a)(2) employs the term 'escape' to contemplate an unauthorized departure from, or failure to return

8

to, a 'community residence.'"). Moreover, the government also concedes that, having the burden of proof on the issue, see Rosa, 507 F.3d at 151, it "did not establish, pursuant to [Shepard v. United States, 544 U.S. 13, 26 (2005) (limiting court's review to specific documents when deciding under which provision of a statute encompassing both violent and non-violent crimes a defendant was convicted)], that the defendant had been convicted of an affirmative escape from custody rather than a failure to return." Government's Supplemental Letter Br. 2 (Feb. 4, 2009). The government therefore concluded:

> For this reason, the record would not support, in the wake of Chambers, a conclusion that the defendant had been convicted in state court of an "escape" crime that generically qualifies as a violent felony under § 924(e) . . . .

> [E]ven the facts outside the scope of Shepard, if they could have been considered, would have narrowed Mills'[s] conviction only to either a failure to report or a walkaway escape from a non-secure facility . . . . [T]he Government concedes that a simple walkaway escape from a nonsecure community residence does not constitute the sort of purposeful, aggressive and violent behavior that is required . . . to constitute a "violent felony" for the purposes of § 924(e).

Id. at 2-3.

We need not address whether a "walkaway escape" is, as the government says, not a violent felony for these purposes under Chambers. Cf. Jackson, 301 F.3d at 63 (holding, prior to Chambers, that a walkaway escape is categorically a violent felony). For the purpose of deciding this appeal, it is

9

sufficient to note our agreement with the government that after Chambers, a failure to report or failure to return is not a violent felony under the ACCA, and that the government concedes it has not proved -- and cannot prove -- that Mills was convicted of anything more than a failure to return. See Chambers, 129 S. Ct. at 693 ("[W]e conclude that the crime here at issue [failure to report to a penal institution, in violation of Ill. Comp. Stat., ch. 720, § 5/31-6(a)] falls outside the scope of ACCA's definition of 'violent felony.'"); see also id. at 691 ("we believe that a failure to report (as described in the statutory provision's third, fourth, fifth, and sixth phrases)[, including, (3) failing to report to a penal institution, (4) failing to report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return from work and day release,] is a separate crime, different from escape (the subject matter of the statute's first and second phrases)[, including (1) escape from a penal institution and (2) escape from the custody of an employee of a penal institution]").

Mills's sentencing was thus improper, if understandably so. The district court's determination that Mills was an armed career criminal under the ACCA had two effects on his sentencing: (1) it required a mandatory minimum sentence of 180 months under 18 U.S.C. § 924(e)(1); and (2) it changed Mills's base offense level from 24 to 33 pursuant to U.S.S.G. § 4B1.4(b)(3)(B), which led to a Guidelines imprisonment range of 188 to 235 months. As noted, the district court sentenced Mills to a term of 188

10

months, at the bottom of this range.  Because the district court's calculation of the applicable Guidelines range was affected by its determination -- which, in light of Chambers, we now recognize was incorrect -- that Mills was an armed career criminal under the ACCA, we remand to the district court to vacate the sentence and to resentence Mills.[2]  Cf. United States v. Fagans, 406 F.3d 138, 141 (2d Cir. 2005) ("In many circumstances, an incorrect calculation of the applicable Guidelines range will taint . . . [a sentence that] may have been explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference.").

## II.  Whether Mills's Sentence Was Procedurally Unreasonable

We doubt that Mills's sentence was imposed in a procedurally unreasonable manner.  See Rita v. United States, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth [reasoning] enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); see also United States v. Villafuerte, 502 F.3d 204, 210 (2d Cir. 2007) (stating that although "[n]on-frivolous arguments for a non-Guidelines sentence" may require some discussion, "we do not insist that the district court address every argument the

---

[2]  We intimate no view as to the appropriate course of action when an improper application of the ACCA does not affect the district court's calculation of the applicable sentencing range.

defendant has made or discuss every § 3553(a) factor individually").  Inasmuch as we are remanding for resentencing, however, this is not an issue we need resolve.

**CONCLUSION**

For the foregoing reasons, we remand to the district court to vacate the sentence and to resentence Mills.